# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SILVIO ANTONIO DUARTE-BORGE,

        Defendant-Appellant.

UNPUBLISHED
February 18, 2016

No. 324435
Emmet Circuit Court
LC No. 14-003971-FC

Before: HOEKSTRA, P.J., and METER and M. J. KELLY, JJ.

PER CURIAM.

Following a jury trial, defendant appeals as of right his convictions for two counts of first-degree criminal sexual conduct (CSC), MCL 750.520b(1)(a) (victim under 13 years of age) and two counts of second-degree CSC, MCL 750.520c(1)(a) (victim under 13 years of age). The trial court sentenced defendant to concurrent sentences of 25 to 37½ years in prison for each first-degree CSC conviction and to 7 to 15 years in prison for each second-degree CSC conviction. Because the trial court did not abuse its discretion by denying defendant's motion for an in camera inspection of the victim's privileged mental health records and defendant was not denied the effective assistance of counsel, we affirm.

## I. FACTS

According to the evidence introduced at trial, the victim was born in 2000 and adopted by Mark Huysken and his then-wife Diane Duarte. Diane and Mark divorced in 2006, after which Diane married defendant. According to the victim's testimony, defendant sexually abused the victim numerous times in 2007 and 2008 in Mackinaw City. The abuse stopped for a time when Diane and defendant moved to Petoskey, and resumed when they later moved to Portage in 2010. According to the victim, the abuse stopped when she was about 13 years old.

The victim first disclosed the abuse in December of 2013, when she told her stepmother, Amy Huysken. Amy reported the matter to police, and the victim underwent a forensic interview. During this first interview, the victim only described the abuse in Mackinaw City and she denied that abuse had occurred in Portage. However, after later disclosing more details of the abuse to Amy, the victim underwent a second forensic interview, at which time she reported the abuse in Portage as well as additional details she did not include in her first interview. To explain the victim's delay in reporting the abuse as well as the inconsistencies in her forensic

-1-

interviews, the prosecution presented expert testimony at trial from Barbara Cross, a mental health therapist qualified as an expert in the delayed reporting of child sexual abuse. Although Cross had not met or interviewed the victim, Cross testified that children commonly delay in the reporting of sexual abuse and that their disclosures are often made piecemeal, with more details emerging over time.

At trial, defendant testified and he denied that any sexual abuse occurred. The defense emphasized that there were no witnesses to the alleged abuse and no physical evidence to support the victim's allegations. Defendant also presented testimony from several family members, including Diane, the victim's older brother, the victim's grandfather, and the victim's aunt, to support his claim that he was never alone with the victim in a workroom where most of the abuse purportedly occurred in Mackinaw City. The defense also made numerous efforts to undermine the victim's credibility, including cross examination of the victim regarding the inconsistencies between her two forensic interviews, evidence that the victim exhibited behavioral problems, and evidence from various family members that the victim had a tendency not to tell the truth.

The jury convicted defendant of two counts of first-degree CSC and two counts of second-degree CSC. The trial court sentenced defendant as noted above. Defendant now appeals as of right.

## II. DISCOVERY OF PRIVILEGED MENTAL HEALTH RECORDS

Before trial, defendant filed a motion seeking an in camera review of the victim's mental health records for the time between the first and second forensic interviews, which the trial court denied. On appeal, defendant argues that the trial court abused its discretion by denying his motion for in camera review of the victim's privileged counseling records. In particular, given the inconsistences between the victim's two forensic interviews, defendant argues that there is a reasonable probability that the victim's mental health records might contain material information relevant to his defense such as further inconsistencies in the victim's story as well as a possible explanation for why the victim's story changed between her first and second forensic interview. Under MCR 6.201(C)(2), defendant maintains that the trial court should have conducted an in camera review of the records to determine whether they were discoverable.

We review a trial court's decision regarding a discovery request, including a request for an in camera hearing, for an abuse of discretion. *People v Phillips*, 468 Mich 583, 587; 663 NW2d 463 (2003); *People v Laws*, 218 Mich App 447, 455; 554 NW2d 586 (1996). A trial court abuses its discretion when its decision is outside the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

"There is no general constitutional right to discovery in a criminal case." *People v Elston*, 462 Mich 751, 765; 614 NW2d 595 (2000). Rather, the scope of discovery in a criminal case in Michigan is governed by court rule and specifically constrained by the limitations set forth in MCR 6.201. *People v Greenfield (On Reconsideration)*, 271 Mich App 442, 447; 722 NW2d 254 (2006). Relevant to the present case, MCR 6.201(C)(1) states, in part, that "[t]here is no right to discover information or evidence that is protected from disclosure by constitution, statute, or privilege[.]" Communications to a psychologist made in connection with the

psychological treatment of a patient are privileged, and thus not generally discoverable in a criminal case in Michigan.  See *People v Carrier*, 309 Mich App 92, 106; 867 NW2d 463 (2015); MCL 330.1750; MCR 6.201(C)(1).

However, under MCR 6.201(C)(2), when a defendant requests discovery of privileged information, privileged information must be inspected in camera by the trial court when "a defendant demonstrates a good-faith belief, grounded in articulable fact, that there is a reasonable probability that records protected by privilege are likely to contain material information necessary to the defense."  See also *People v Stanaway*, 446 Mich 643, 676-677; 521 NW2d 557 (1994).  In other words, an in camera inspection should be utilized to determine whether the evidence sought is discoverable, thereby "protecting the privacy interests of the alleged victim, while safeguarding the defendant's right to a fair trial."  *Id.* at 680-681.  "If the court is satisfied, following an in camera inspection, that the records reveal evidence necessary to the defense, the court shall direct that such evidence as is necessary to the defense be made available to defense counsel."  MCR 6.201(C)(2)(b).

In contrast, "disclosure should not occur when the record reflects that the party seeking disclosure is on a fishing expedition to see what may turn up."  *Stanaway*, 446 Mich at 680 (quotation omitted).  For this reason, an in camera hearing is not necessary if a defendant fails to state "specific articulable facts that would indicate that the requested confidential communications were necessary to a preparation of his defense."  *Id.* at 681-682.  Consequently, "a generalized assertion that the counseling records may contain evidence useful for impeachment on cross-examination" will not entitle a defendant to an in camera hearing.  *Id.* at 681.  Likewise, a hearing is not necessary when a defendant seeking to unearth prior inconsistent statements has not articulated "a good-faith basis for believing that such statements were ever made or what the content might be and how it would favorably affect his case."  *Id.*  This type of request for a fishing expedition "falls short of the specific justification necessary to overcome the privilege" and to necessitate an in camera hearing.  *Id.* at 681-682.

In this case, the trial court did not abuse its discretion by denying defendant's request for an in camera hearing because defendant did not demonstrate a good-faith belief, grounded in articulable fact, that an in camera review of the victim's counseling records was likely to uncover material information necessary to his defense.  MCR 6.201(C)(2).  As in *Stanaway*, defendant put forth generalized allegations that the victim's counseling records may contain evidence that could be used to impeach the victim's credibility.  But, defendant has not articulated a good-faith basis for believing that the victim made additional inconsistent statements during therapy that would favorably affect his case.  Cf. *Stanaway*, 446 Mich at 681-682.  At most, defendant notes that there were inconsistencies between the victim's two forensic interviews, and defendant speculates that the victim's therapy may somehow have been responsible for these inconsistencies.  However, defendant provides no good-faith reason for these speculations; i.e., defendant offers no tangible reason to suppose that contradictions in the victim's second forensic interview resulted from the victim's therapy.  Cf. *People v Crear*, 242 Mich App 158, 169; 618 NW2d 91 (2000), overruled in part on other grounds by *People v Miller*, 482 Mich 540; 759 NW2d 850 (2008).  And, even if counseling led the victim to make the additional disclosures documented in the second forensic interview, defendant fails to explain how this fact would benefit his defense.  See *Stanaway*, 446 Mich at 681-682.  For example, there is simply no

reason to suppose that there was anything improper in the methods used during the victim's therapy. Cf. *Crear*, 242 Mich App at 169.

Moreover, given that defendant has articulated nothing more than a general desire to uncover additional inconsistent statements for impeachment purposes, he has not shown that it is reasonably probable that the victim's statements during therapy are material to his defense. Evidence is considered "material only if there is a reasonable probability that the trial result would have been different, had the evidence been disclosed." *People v Fink*, 456 Mich 449, 454; 574 NW2d 28 (1998). In the absence of the unspecified inconsistencies defendant hoped to uncover in the victim's therapy records, defendant was nonetheless able to attack the victim's credibility in several ways, not the least of which was confronting her with the inconsistency in her forensic interviews. He also presented the testimony of family members that the victim was not a truthful individual. Given the inconsistencies between the forensic interviews and the other evidence available to impeach the victim's credibility, defendant failed to show that any unspecified inconsistent statements uttered by the victim in counseling were material to his defense. See MCR 6.201(C)(2); *Fink*, 456 Mich at 458-459. In sum, the trial court did not abuse its discretion when it denied defendant's motion for in camera review of the victim's counseling records.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant asserts that trial counsel rendered ineffective assistance. In particular, defendant argues (1) that counsel should have investigated Cross's testimony and called an expert witness to refute Cross's testimony regarding sexual abuse disclosures, (2) that counsel's motion for an in camera review of the victim's mental health records should have included information about the victim's diagnosis of Reactive Attachment Disorder (RAD) and that counsel should have presented evidence of RAD at trial, (3) that counsel performed ineffectively by failing to investigate defendant's cousin, Robert Cross, as a possible alternative perpetrator of the abuse and by failing to present this theory to the jury, (4) that counsel failed to alert the trial court that the jury's foreman slept through "all" of the victim's testimony, and (5) that the cumulative effect of counsel's failings deprived defendant of the effective assistance of counsel.

Defendant failed to raise a claim of ineffective assistance of counsel in the trial court by moving for a new trial or a *Ginther*[1] hearing. Consequently, defendant's claims of ineffective assistance are unpreserved, and our review is limited to mistakes apparent on the existing record. *People v Horn,* 279 Mich App 31, 38; 755 NW2d 212 (2008). To establish a claim of ineffective assistance, a defendant bears of the burden of establishing: "(1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014) (quotation marks and citations omitted). Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses, and a "substantial defense is one that might have made a

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

difference in the outcome of the trial." *People v Chapo,* 283 Mich App 360, 371; 770 NW2d 68 (2009) (quotation omitted). However, ultimately, decisions regarding what evidence to present and what witnesses to call are matters of trial strategy, and this Court will not second-guess strategic decisions with the benefit of hindsight. *Horn,* 279 Mich App at 39. Indeed, "[e]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson,* 261 Mich App 657, 663; 683 NW2d 761 (2004). "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Carbin,* 463 Mich 590, 600; 623 NW2d 884 (2001).

First, defendant argues that his counsel performed below an objective standard of reasonableness by failing to investigate Cross and by failing to call a rebuttal expert witness. This argument lacks merit because defendant has not established the factual predicate of his claim. That is, there is nothing in the record to establish that counsel failed to investigate Cross's testimony or failed to investigate the possibility of calling an expert to testify on defendant's behalf. See *People v Ackerman,* 257 Mich App 434, 455; 669 NW2d 818 (2003). The record shows that counsel subjected Cross's testimony to thorough cross-examination, and there is no indication, with respect to Cross's testimony, that counsel was ignorant "of valuable evidence which would have substantially benefit the accused." *People v Caballero,* 184 Mich App 636, 642; 459 NW2d 80 (1990). Further, the fact that counsel did not call an opposing expert witness is presumed to be a strategic decision, which we will not second-guess. See *Ackerman,* 257 Mich App at 455. Indeed, on the existing record, there is no proof that an expert would have testified favorably to defendant, meaning that defendant has not established the factual predicate of his claim and has not established a reasonable probability that, but for counsel's purported error, the result of the proceedings would have been different. See *id.* at 455-456.

We note that, in relation to his claim of ineffective assistance, defendant moved this Court to remand for an evidentiary hearing, which this Court denied.[2] In support of his position, defendant attached documentary evidence to his motion for a remand and he attaches additional materials to his brief on appeal. However, these materials were not part of the lower court record, and they need not be considered. See MCR 7.210(A); *Horn,* 279 Mich App at 38; *People v Watkins,* 247 Mich App 14, 31; 634 NW2d 370 (2001). Moreover, even considering this evidence, at most, defendant's appellate attorney vaguely states in an affidavit that she was able to locate a potential expert, Dr. Katherine Okla, "to counter the prosecutor's expert witness and provide a legitimate explanation for why a child would lie." However, there is no evidence to establish this potential expert's qualifications, and there is no affidavit from this expert to establish her willingness to testify on defendant's behalf or to establish the substance of her potential testimony. See MCR 2.119(B)(1). In the absence of such evidence, defendant has not established the factual predicate of his claim. See *Ackerman,* 257 Mich App at 455-456.

---

[2] *People v Duarte-Borge,* unpublished order of the Court of Appeals, entered April 24, 2015 (Docket No. 324435).

Second, defendant argues that his counsel failed to present evidence that the victim suffered from RAD and failed to include reference to RAD in the request for an in camera review of the victim's mental health records. The lower court record contains no evidence that the victim suffered from RAD, meaning that defendant has failed to establish the factual predicate of his claim. See *Carbin*, 463 Mich at 600. Insofar as defendant presents an affidavit from Diane on appeal, averring that the victim told Diane that she had been diagnosed with RAD, these hearsay statements are not part of the lower court record and need not be considered. See MCR 7.210(A); *Watkins,* 247 Mich App at 31. In any event, this scant hearsay evidence that the victim suffered from RAD wholly fails to establish the importance of such evidence. That is, defendant cannot show prejudice because he has neglected to present evidence to define RAD, describe its symptoms, or to otherwise explain how a RAD diagnosis bolsters his case. See *Carbin*, 463 Mich at 600.

Third, defendant argues that his counsel was ineffective for failing to investigate an alternative potential perpetrator, his cousin Robert. While defense counsel was required to investigate all substantial defenses, *Chapo,* 283 Mich App at 371, the lower court record contains no evidence that defendant relayed his claim that this other individual could be the perpetrator. "[C]ounsel cannot be found ineffective for failing to pursue information that his client neglected to tell him." *People v McGhee*, 268 Mich App 600, 626; 709 NW2d 595 (2005). And, in any event, defendant makes no offer of proof to substantiate the self-serving, threadbare assertion that Robert may have sexually abused the victim. The victim unequivocally identified defendant as the perpetrator, and, even considering the documents offered by defendant on appeal, there is absolutely no indication that Robert ever had sexual contact with the victim. In other words, this was not a substantial defense, and counsel was not ineffective for failing to pursue the far-flung possibility that Robert sexually abused the victim. See *Chapo,* 283 Mich App at 371-372. Indeed, it was eminently reasonable not to propose an alternate perpetrator given that the defense strategy at trial was to paint the victim as a liar and to categorically deny that the abuse had occurred in the first instance. Cf. *id.* at 372 ("Counsel's choice between weak defenses does not suggest deficient performance or prejudice.").

Fourth, defendant argues that counsel was objectively unreasonable for failing to inform the trial court that the jury foreman slept through the victim's testimony. Defendant fails to establish the predicate for this argument, as the record contains no evidence that the jury foreman slept through any part of the victim's two-day testimony. See *Carbin*, 463 Mich at 600. Moreover, given that the juror purportedly slept through testimony from a prosecution witness, "defense counsel could reasonably have made a strategic decision to assume that the juror's missing that testimony would have helped the defense." *People v Dunigan*, 299 Mich App 579, 586-587; 831 NW2d 243 (2013). Further, defendant has failed to show that the allegedly sleeping juror affected the outcome of the proceeding. Cf. *id.* at 586.

Lastly, defendant maintains that, even if no single mistake by counsel merits reversal, the cumulative effect of counsel's errors entitles him to a new trial. "The cumulative effect of several minor errors may warrant reversal even where individual errors in the case would not warrant reversal." *People v Knapp*, 244 Mich App 361, 388; 624 NW2d 227 (2001). However, without individual error, no cumulative error is shown and defendant is not entitled to reversal. *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007).

Affirmed.

/s/ Joel P. Hoekstra
/s/ Patrick M. Meter
/s/ Michael J. Kelly